I see it. I'm sorry. Good morning, Your Honors. My name is Phyllis Andelin and I am representing the appellant, Laura Buchell-McIntyre, with my co-counsel, Mr. Jeffrey Callis, who was the trial attorney in the case. This appeal comes up on the trial judge's grant of judgment as a matter of law on the verdict for the appellant on and with findings, necessary findings within the verdict on the foundational facts. The court below reversed the jury verdict based on his own factual findings and his own credibility determinations regarding the officer's subjective beliefs. The trial court did not set aside the entire verdict. Is that correct? Yes, the trial court did set aside the entire verdict. And you concede that the judgment for excessive force, we're not dealing with that part of the? We are. Yes, we are. That was one of the claims. But all right. Did the trial court reverse on that? Yes. Yes. Oh, okay. You know, you tell us that the judge just made credibility findings and substituted and made factual findings. But the judge specifically said, I'm not doing that. The trial judge can overturn the jury and grant such a motion only if under the governing law there can be but one reasonable conclusion as to the verdict. I mean, that's standard JMOL stuff. That's right. And the court below did give service to the standard rules of law, which I'm not going to repeat to Your Honors. You know what a Rule 50b motion is. There's really three issues of law. The first is that your review of the JMOL order is de novo under Acosta. And I might note that Acosta also held that the jury, not the judge, must decide the foundational and historical facts. And that's what happened in this case. The way I read this now, there seems to be no dispute but that your client touched the officer's badge. There is no dispute. What is not mentioned So the problem with that is, that is a battery. It's an unconsented due touching. It may be de minimis, it may be tacky, but it was a touching. And under the law, first year of law school, that is a battery. However, Your Honor, Officer Foster did not arrest her for the touching of the badge. Officer Foster It's an objective standard, though. But Officer Foster did not, and nobody has ever said, except this judge, that that was the reason he arrested her. The reason he arrested her That's an objective standard. That created probable cause to arrest for battery. Well, the instructions Because it was a battery. Everybody agrees that there was an unconsented due touching. The instructions given to the jury were that if they found that there was a battery under his definition, which is an unwarranted, unjustifiable battery in a manner that is rude, insolent, and angry, those were the instructions that were given to the jury. The jury found that there was no probable cause necessarily finding that the touching was not offensive. That's what JMOL is all about. You look at the uncontested facts, and there was a battery. I mean, if you admit your client touched the officer, you know, as insignificant as that might be in the larger world, legally, that becomes a battery. And that creates probable cause to arrest for battery. He didn't arrest her for that. That's the point I'm trying to make. What difference does that make if there's an objective basis to arrest her? It was never an issue. Objectively or subjectively, Foster did not see that as a battery. Foster says, and he testified, that he arrested her because she shoved him. And here is where the trial judge ignored the foundational facts and ignored the jury's verdict, and specifically ignored the evidence of all the witnesses except Officer Foster, that there was no shoving. He made a credibility determination that there was a shoving and that Officer Foster believed that there had been a battery. And again, it's not only usurping the core function of the jury, which is credibility determinations, but is also wrong on the legal issue of qualified immunity. Because in both areas, when the judge overturns the claim for excessive force and when the judge overturns the finding of no probable cause, on both of those issues the judge relied on Officer Foster's beliefs, his subjective beliefs. He gives the court below the reasonable police officer in Foster's position would have believed that he or she had probable cause to arrest plaintiff for battery of a police officer. On the battery issue? I'm reading what the judge said. Is he there referring to the shoving? He's referring to the crime of battery of a police officer. I think he's referring to the shoving. Well, he's referring to all of it. Officer Foster believed he was dealing with a person who was intoxicated. She grabbed his badge and she had retaliated by shoving him. Under these circumstances, Foster decided to arrest her for battery of a police officer. Even if he were mistaken as to sobriety or her motivation or even the source of the shove, the evidence admits only one conclusion. A reasonable police officer in Foster's position would have believed that he or she had probable cause to arrest plaintiff for battery of a police officer. Well, the problem is that there is no evidence that that was objectively reasonable. There is no evidence at all. All of the evidence, except Foster's own testimony, was that there was no shove. Except that what you're not coming to grips with, in my view, is that the district court said even if somebody else came along and shoved him, even if it wasn't her, there was still probable cause for the arrest because of her touching. The touching of the badge. Well, I understand that's what he said. Why is that wrong as a matter of law? I'm – because on the facts and on his own definition of what a battery is, his own definition. Whose definition? Trial judges. The jury instructions that he gave. But we're now here. What is our – what is our definition? What is the proper legal definition that we are to apply?  And again, Officer Foster didn't believe or didn't see it himself as a battery and did not arrest her. He said that in his testimony. That's undisputed. Yeah. But the problem with qualified immunity talks about reasonable officers. There's an awful lot of leeway given to officers to make mistakes under the heat of the moment. Well, the – the trial court says in his previous three orders denying this very motion on the same facts, he says that – that Officer Foster's testimony about the arrest and about the events leading up to the arrest was confusing, and I think that's an understatement. There is no evidence that he was – that on which someone could base a conclusion that he was acting objectively reasonable. What's the – what's the excessive force? And I was just going to get to that, because there, what the judge says is that this woman, who was walking away from him, according to the transcripts, that this – the evidence clearly established that Officer Foster believed that plaintiff shoved him. Under the law, his belief that an individual has shoved him, even if he is mistaken in that belief, entitled him to qualified immunity to arrest that person for battering on a police officer. That is not the law. The law is that it has to be objectively reasonable for an officer to say that. Let's go back to the excessive force claim, though. I'm just saying. Okay. I'm sorry. I did. Yeah, because I – I'm just confusing. The foundational facts that the jury necessarily find – found was that Foster used excessive and unreasonable force in making the arrest. He slammed her up against the police car, didn't he? He – she was walking away from him. He told her to leave. And remember, when you look at objective reasonableness, you also have to look at what is in the record about his orders. His orders were not to clear the house. His orders were to assist. Yeah, yeah. What's the excessive force? You're straying from the question. The excessive force is, is as she was walking away from him, he grabbed her from behind, pulled her arm up, used what the judge called a pain-compliant hold, and took her down to the ground, and then dragged her outside and slammed her against the car. Now, let me ask you this. Assuming that we don't agree with your first point, for the sake of argument, this claim is independent, correct? So even if there was a proper arrest, there could still be excessive force in making the arrest, right? Yes. That's the point I was inartfully trying to make. The – this is a subjective belief, again, subjective, that Officer Foster could have believed that he could use force, and never mentions the fact whether the force was excessive. The issue is not whether he could use force. The issue is whether his force was excessive and unreasonable. What were the injuries that might manifest excessive force? I mean, in every arrest, they whip people's arms behind them, throw handcuffs on them, push them to the ground, and that's what they're taught in the academy, all of them. But what's the – what are the injuries that show this was excessive? They use force. Arresting is forcing people to do things. What's the excessive part here? What are the injuries? She – her arm was injured for some time, and also she had severe emotional injuries, and that's all in the transcript. What about her – tell me more about her injury to her arm. What's the record show the injury was? Her muscles were pulled, and she had severe bruising. I'm sorry. This is the trial attorney, and I just had a moment there. It's okay. She was injured. She was physically injured. Yes, she got a wound. Are there doctor's reports or photographs of any of these injuries? Yes. Yes, there were. And as I said, she had emotional injuries also. But when the court below says he believed he could use force, A, there's no evidence of any that could possibly support objective, reasonable. That's a standard. You have to have evidence for that. Arresting somebody is the use of force. Putting people's hands behind their back and putting handcuffs on them is force. The question is whether there was excessive force. So your argument would be that throwing her down, dragging her out, and hitting her up against the car, that's why it was excessive, because none of that was necessary to take her into custody. It also wasn't necessary to use what is euphemistically called as a pain-compliant hold. In other words, he hurt her and took her down. That's what he learned in the academy, apparently, how to do that, and took her and put her on the floor and then dragged her out. And the jury found that that force was excessive, that he didn't have to do it. She, as I said, the undisputed evidence was that she was walking away. I guess my basic point is that I'm going to use all my time. I can see that. Kennedy. The verdict that the jury rendered segregated the several claims, right? Yes, it did. And you have to look at the jury instructions to see what they necessarily found in coming to – it's not a jury verdict with lots of questions. It's pretty conclusory questions. You have to look at the jury instructions on what elements they had to find to find no probable cause or excessive force. But the excessive force one, all he says is that he could have believed he could use force and no mention of the excessive and unreasonable force that the jury found. In other words, the jury found these foundational facts necessarily to come to the verdict that it did, and the judge made his own credibility determinations on what Officer Foster did or didn't do or believed or didn't believe. And I believe that that – I'm submitting that that usurped the jury's function. Did you want to save your last minute for rebuttal? I don't know what I could say in rebuttal, but I will. Okay. You don't have to take it when the time counts. No, I'm not going to take it. Well, you can listen carefully and correct the other side. All right. Thank you. Good morning, Your Honors. May it please the Court. My name is Cliff Greenberg. I represent the City of San Jose and Police Officer Foster in this case. I heard a few factual statements that need some correction, and I want to start with those. Counsel said several times that Officer Foster testified that he did not arrest the plaintiff for the badge touching, but did arrest her for the shove. I quoted the only evidence in the record regarding that issue, and it simply does not say that. You quoted it where in your brief? Yes. My brief is falling apart. The bottom of page 17 on to page 18. Read it. Question. What happened after you used your left hand and knocked her hand away? Answer. I believe I was going to try to grab her hand, and then I felt a push on my left shoulder, which was actually right shoulder. What did you do once you felt the push on your right shoulder? I was able to step closer to her and grab her hand and place her hand in a control hold. Why did you do that? I was going to place her under arrest. For what? For battery on a police officer. There's no question that says. He uses the word control hold. He does. Where does the pain compliance hold come from? In this case, he says, I was able to step closer to her and grab her hand and place her in a control hold. A pain compliance hold, and I'm not sure that this is in the record, so I'm answering it based on my understanding of how these things work. A control hold is not a lot different from a pain compliance hold. Did anybody say I used a pain compliance hold on her? Did he say that? I don't know if he said it here, but I believe that there was extensive testimony. I'm sure there was. I'm interested in the excessive foresight of the whole thing. What do the facts show from the plaintiff's side? From the plaintiff's side, the facts show that the the after after the badge touching, the plaintiff says that the officer hit her arm. The officer says he indeed hit her arm. We don't, yeah, but it has to be from her point of view, because the jury was entitled to believe her version of events. She says the officer first hit her arm, and then as she went to walk away, grabbed her arm from behind. Then what happened? Then, this is an important part, both what I heard just now is that she was taken to the ground, and the testimony is very clear that she was never taken to the ground. Last night, I read through all of her testimony. She says she was falling, but then another officer grabbed her, so that by the time the other officer grabbed her, she never fell on the ground. She had two officers holding her arms. They hurried her out of the house and put her up against the police car and handcuffed her. Does she say, put me up against the police car? I'm sure she uses a different word from that. And the jury was entitled to believe her version of events, that it was ungentle in every regard, and that she suffered pain from it. I really don't understand. Well. Like Saussure, Your Honor. That is exactly the situation that the plaintiff testified to in Saussure. I didn't do anything. I wasn't resisting. They were ungentle with me, and they shoved me into that van. And the Court said a reasonable officer could believe, under those circumstances and that was a military situation with the Vice President talking, but what we had here was a possibly hostile crowd of military. The difference here, though, the difference here, and I may be misremembering this, but I thought in Saussure there was not a jury verdict in his favor. I certainly don't remember that, but the issue is the same. It suggests perhaps different, where the question is whether the jury was or was not entitled to find that the force was excessive. Normally, we give great deference to jury verdicts, unless they're unsustainable as a matter of law. You're right, Your Honor, and now I'm remembering. Saussure obviously was a motion for summary judgment case now that I'm thinking about the analysis. Okay. And the yes, you have a jury here, and you are required to resolve issues of fact in favor of that verdict, but the same thing applied in Saussure, where the judge was required, the Court was required, to look at the facts most favorable to the plan. So you have an analogous situation. What do you say the facts were in Saussure involving the car? He was shoved against the car? He was thrown into the jury. He was pushed into a van. He was placed in a van. Thrown into a van when he wasn't resisting. He was he was ---- That's different than the ---- yeah. Where Respondent claims he was shoved or thrown inside. And the reason for the shove remains unclear. It seems agreed that Respondent placed his feet somewhere on the outside of the van, perhaps the bumper, but there's a dispute about whether he did so to resist. As a result of the shove, he fell to the floor where he caught himself just in time to avoid injury. That's slightly different than being thrown up against the car. Well, it might be slightly different, but there are no injuries. There was another misstatement that I want to point out. There were no facts relating to medical injuries of this plaintiff. The Court can look through the records. So is it your position that there can be no excessive force claim if a person doesn't come in with doctor bills or hospital bills? Of course not, Your Honor. But that relates to the issue of how hard was she thrown against the police car. If she was thrown against the police car. But that's all for the jury. Isn't that a question for the jury? Well, ordinarily, yes. But in this case, the judge who was present at all the testimony listened to the arguments that were presented after the verdict and said, based on his view of the facts, even most favorable to the plaintiff, there was insufficient evidence to show that this officer could not have believed that what he was doing was reasonable. And we're talking about immunity. We're talking about qualified immunity. But this particular claim in the jury instructions was isolated, and on the verdict form, a specific amount of damage was assessed with respect to the slamming against the court. Not? No. The jury verdict amounts were assessed based on the causes of action and did not of the cause of what facts related to the excessive force. There was no answer on the jury verdict form that would tell a court that they gave money for the shove or the hit. So you're saying the jury verdict amount is indivisible? If we – if we – There's no way to discern from the jury verdict if the court says, I think that possibly the shove against the police car is excessive force. There's no way to determine how – Yes, so would you look at page 50 of the excerpts, please? Sure. There's a $500 amount that's segregated from the others. That deals with certainly the issue of battery during the arrest, but there's no way to know. I'm answering the question about the shove against the police car. Battery during the arrest could be various things. Well, does it matter as long as there's one? No. If there's any battery during the arrest, then it supports the jury's verdict, right? Absolutely. I was answering the question if you could figure out whether – how much was attributable to the shove onto the police car. Yes, you can figure out $500 for the battery, but we don't know what the jury was thinking in terms of battery. Could I ask you briefly about the – the propriety of the arrest? Does it make any difference to the analysis that, according to the evidence that the jury must have believed, Officer Foster was trying to hide his badge and badge number at the time that the plaintiff tried to touch the badge or did touch the badge? I don't know if you can necessarily know what the jury found on that. Well, ignore the preface to my question. Does it make any difference to us analytically that he was attempting to hide it and she touched it? She can complain about the fact that he didn't do it, but she can't commit a battery against him for that. And everyone admits, as was discussed earlier, that there was a battery committed which gave rise to the probable cause. She cannot commit a battery even if the police officer improperly told her what to do or had no right to even be there. She can't commit a battery against that officer. And if there are no further questions? Judge Beeson, do you have anything else? No, that's fine. Thank you. I think not. Counsel, you have one minute if you want to use it. Well, talk slow. No, no, whoa, whoa, whoa. You know, you've got a client. You could talk slow. Think on your feet. Okay. Was she or was she not thrown to the ground, according to the record? According to Judge Ware, she was thrown to the ground, and that is in his first order denying the Rule 50B motion. This comes up on reconsideration. In his first order, which is in the appendix, somewhere, which is in the appendix, he specifically says that there was pain compliance and she was taken down to the floor. This is Judge Ware. And he also states that Foster testified that there was that he did not arrest her because of the badge. Now, that's Judge Ware's take on the testimony. He was there, and I found it in the record also. This is what he says, and that's at the appendix, page 54. Officer Foster struck her across the arm with a heavy flashlight. As she recoiled from the force of the blow, he proceeded to take her down to the floor. Then the two officers forcefully dragged her out of the building, threw her up against a car handcuffed her, and eventually took her off to jail. And then the next paragraph, he says the evidence with respect to the battery for which she was arrested was confusing. Officer Foster further testified, I'm paraphrasing a bit, that he did not arrest her for touching his badge. It is significant in the Court's analysis that her principal damages are not from physical injuries. Her most significant injury was emotional distress. I read that, and I'm not sure how that supports his taking the excessive force issue away from the jury, or rather disregarding the jury findings. I want to address the excessive force. It is completely divisible. It is the fourth claim, deprivation of civil rights. The jury instructions tell the jury, and by the way, there was no objection from the defendant to any of the jury instructions. The jury instructions instruct on the first claim and tell them that when unreasonable force was used to place her under arrest. It's one of the elements. And the fourth claim, the verdict, as Your Honor pointed out, there's a separate verdict on the – it's not a special verdict, but there's a separate verdict on each claim. And on the fourth claim, question number four, after he made a decision to place her under arrest, did Plaintiff Laura Burchell McIntyre prove that Defendant William Foster committed a battery against her by using unreasonable force to arrest her? And on that claim, they awarded her separately $100,000. $100,000 for false arrest, which – and I'm not conceding anything, but if you accept that the touching of his badge, albeit the instructions were that it had to be unwarranted, unjustified, angry, and so on, if you accept that, then the third claim and the second claim, you can put those aside. I'm not conceding this. I'm just saying, arguendo, because there is a defensible claim for deprivation of civil rights, which is the use of unreasonable force. Thank you, counsel. And I apologize for the holdup. No, no problem. Thank you. We appreciate the arguments of both parties. And the case just argued is submitted. Our final case on the morning docket is IAM.
judges: Beezer, Trott, Graber